## 36456. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. FIVE TRANSPORTATION COMPANY et al.

MARSHALL, Justice.

This is a wrongful death action being prosecuted by appellee Alma Christine Stalvey, in her individual capacity and as administratrix of the estate of her deceased husband, Buford E. Stalvey.

It is alleged in the complaint that the deceased died as a result of injuries sustained in a collision between an automobile driven by him and a truck owned by appellee Five Transportation Co. It is alleged that the cause of this collision was the negligence of the driver of the truck. Five Transportation Co. is named as a defendant, and its liability insurer, appellee Liberty Mutual Insurance Co., is named as a co-defendant.[1] The plaintiff is seeking to recover the following items of damage: $1,000,000 for the wrongful death of the deceased; $25,000 for pain and suffering of the deceased prior to his death; $1,050 for property damages to the automobile; and $185 in wrecker and storage charges.

The deceased was insured under an automobile insurance policy issued by the appellant, State Farm Mutual Automobile Insurance Co. This insurance policy provided $5,000 in personal injury protection (PIP) benefits written as mandatory no-fault coverage under § 3 of the Georgia Motor Vehicle Accident Reparations Act (Code Ann. § 56-3403b).[2] (Subsequent references to the Reparations Act will be by Code section.) It also provided $45,000 in PIP benefits

---

[1] Generally, evidence that a party has liability insurance is inadmissible, and the defendant's insurance carrier cannot be named as a party defendant. Agnor, Ga. Evid., § 10-19. However, where a common carrier, in order to obtain a certificate of public convenience and necessity, files a policy of indemnity insurance with the Public Service Commission in lieu of bond, the common carrier's insurer will be joined as a party defendant in a suit against the common carrier arising out of a motor vehicle collision. Code Ann. § 68-612. *St. Paul Fire &c. Ins. Co. v. Fleet Transport Co.,* 116 Ga. App. 606 (2) (158 SE2d 476) (1967). This would appear to be the situation here.

[2] There are four types of PIP benefits available under § 56-3403b. Section 56-3403b (b) (1) provides for no-fault compensation for medical expenses not to exceed $2,500

written as optional no-fault coverage under Code Ann. § 56-3404b.[3] Under this policy, State Farm has paid the plaintiff: $1,249.75 in medical expenses incurred by the deceased: $3,500 in funeral expenses;[4] and $10,250.96 in survivor's benefits.[5] State Farm is obligated to pay the plaintiff an additional $34,999.29 in survivor's benefits, thereby exhausting the $50,000 policy limit.

State Farm has filed a motion to intervene as a party plaintiff in this case, arguing that under Code Ann. § 56-3405b (d) (1) (Ga. L. 1978, p. 2075) it is subrogated to the plaintiff's claims to the extent of all no-fault insurance benefits which State Farm has provided her.

Code Ann. § 56-3405b (d) (1), as enacted in 1978, contains the following pronouncements concerning the subrogation rights of no-fault insurers and self-insurers where the responsible tortfeasor is also insured or is a self-insurer:[6] "Insurers and self-insurers providing benefits without regard to fault described in sections 56-3403b and 56-3404b shall not be subrogated to the rights of the person for whom benefits are provided, except in those motor vehicle accidents involving two or more vehicles, at least one of which is a motor vehicle weighing more than 6,500 pounds unloaded. The right of recovery and the amount thereof shall be determined on the basis of tort law between the insurers or self-insurers involved. Expenses incurred in

---

arising out of an accident. Section 56-3403b (b) (2) provides for no-fault compensation for 85 % loss of income or earnings during disability with a maximum benefit of $200 per week. Section 56-3403b (b) (3) provides for no-fault compensation for expenses not to exceed $20 per day, reasonably incurred in replacing lost services. Section 56-3403b (b) (4) provides for no-fault compensation for funeral services and burial expenses not to exceed $1,500 per person.

[3]The PIP benefits available under § 56-3404b (a) (1) (i)—(iv) are the same as those available under § 56-3403b (b) (1)—(4), with different limitations on the amounts of recovery.

[4]Under § 56-3410b (b) any person eligible for economic loss benefits described in § 56-3403b is precluded from pleading and recovering in an action against a tortfeasor those damages for which compensation is available for economic loss under § 56-3403b. See § 56-3402b (k) defining "economic loss" as meaning "pecuniary loss of the kind described in section 56-3403b, subsection (b)."

Consequently, the appellee in this wrongful-death action is not seeking to recover the $1,249.75 in medical expenses incurred by the deceased or the $3,500 in funeral expenses.

[5]Compensation for loss of income under § 56-3403b (b) (2) and compensation for replacing lost services under § 56-3403b (b) (3) are the only no-fault benefits which survive the death of the insured. Section 56-3403b (b) establishes as a condition precedent to the receipt of these survivor's benefits that the decedent be "survived by a spouse or dependent child or children." The constitutionality of this was upheld in *Cannon v. Ga. Farm &c. Ins. Co.,* 240 Ga. 479 (241 SE2d 238) (1978).

[6]If the responsible tortfeasor is uninsured or is not a self-insurer, § 56-3405b (d) (1) (Ga. L. 1978, p. 2075) provides that, "the insurer or self-insurer providing benefits

exercising the rights of subrogation hereunder shall be at the sole expense of the insurers and self-insurers involved."[7]

The trial court denied State Farm's motion to intervene on three grounds: (1) the weight classification in Section 56-3405b (d) (1), which allows subrogation only in those motor vehicle accidents where one of the vehicles weighs in excess of 6,500 pounds, is arbitrary and unreasonable and, therefore, violative of the equal protection and due process clauses of the state and federal constitutions; (2) State Farm has no interest in the outcome of this suit, nor will disposition of this action impair State Farm's ability to protect its subrogation interests; (3) Section 56-3405b (d) (1) specifically limits the insurer's right of recovery to the insurance carrier of the tortfeasor, and, therefore, State Farm has no right to intervene in this action against the tortfeasor.

---

shall have a right of action to the extent of benefits provided against such tortfeasor only in the event that the person for whom benefits are provided has been completely compensated for all economic and noneconomic losses incurred as a result of the motor vehicle accident."

[7]As was brought out in *Blalock v. Ga. Mut. Ins. Co.,* 239 Ga. 462 (238 SE2d 105) (1977), § 56-3405b (d) (1), as enacted at Ga. L. 1974, pp. 113, 118, provided: "Insurers and self-insurers providing benefits without regard to fault described in sections 56-3403b and 56-3404b shall be subrogated to the rights of the person for whom benefits are provided, to the extent of benefits provided, with the right of recovery and the amount thereof shall [sic] be determined by agreement on the basis of tort law between the insurers involved, or, if they fail to agree, by binding intercompany arbitration under procedures approved by the Insurance Commissioner. Expenses incurred in exercising the rights of subrogation hereunder shall be at the sole expense of the insurers and self-insurers involved. If the responsible tortfeasor is uninsured or is not a self-insurer, the insurer or self-insurer providing benefits shall have a right of action to the extent of benefits provided against such tortfeasor."

In 1976, § 56-3405b (d) (1) was amended by Ga. L. 1976, pp. 1078, 1079, to provide: "Insurers and self-insurers providing benefits without regard to fault described in sections 56-3403b and 56-3404b shall be subrogated to the rights of the person for whom benefits are provided, to the extent of the benefits provided, only in the event that the person for whom benefits are provided has been completely compensated for all economic and noneconomic losses incurred as a result of the motor vehicle accident with the right of recovery and the amount thereof shall [sic] be determined by agreement on the basis of tort by law between the insurers involved, or, if they fail to agree, by binding intercompany arbitration under procedures approved by the Insurance Commissioner. Expenses incurred in exercising the right of subrogation hereunder shall be at the sole expense of the insurers and self-insurers involved. If the responsible tortfeasor is uninsured or is not a self-insurer, the insurer or self-insurer providing benefits shall have a right of action to the extent of benefits provided against such tortfeasor only in the event that the person for whom benefits are provided has been completely compensated for all economic and noneconomic losses incurred as a result of the motor vehicle accident.

We granted State Farm's application for interlocutory appeal, and, for reasons which follow, we reverse.

1. In the first enumeration of error, the appellant argues that the trial court erred in holding that § 56-3405b (d) (1) is unconstitutional. We agree.[8]

What we are dealing with in the present case is a statutory classification that restricts the no-fault insurer's right of subrogation to multivehicle accidents in which one vehicle weighs in excess of 6,500 pounds unloaded. The effect of this is to limit litigation over subrogation to those accidents involving heavier commercial vehicles, such as trucks and buses. Litigation over accidents involving only passenger vehicles is thus eliminated.

A statute is presumed to be constitutional until the contrary appears, and, therefore, the burden is on the party alleging a statute to be unconstitutional to prove it. E.g., *Adams v. Ray,* 215 Ga. 656 (113 SE2d 100) (1960). The record in this case contains no statistical evidence on the question, and it is entirely logical to assume that accidents involving heavier vehicles *tend to* inflict greater injuries and thereby give rise to larger claims. Therefore, this weight classification in the statute promotes one of the purposes of the Reparations Act, which is to eliminate wasteful litigation over moderate to small claims. *Cannon v. Ga. Farm &c. Ins. Co.,* 240 Ga. 479, 482 (241 SE2d 238) (1978).

It is true that, in a given case, a motor vehicle accident involving lighter vehicles might well give rise to larger claims. However, this does not automatically render a statutory classification such as this unconstitutional. In its regulation of business and industry, the state is not bound to make classifications which are perfectly symmetrical or mathematically precise, so long as the classifications are not arbitrary or unreasonable.

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has

---

[8]The appellant also argues that it has a right of subrogation under its insurance contract with the insured (conventional subrogation) and as a matter of equity (legal subrogation). Therefore, the appellant contends that the trial court erred in holding that its ruling that § 56-3405b (d) (1) is unconstitutional deprives the appellant of its subrogation rights in this case. We do not interpret the trial court's ruling in this manner. In any event, we find that a ruling concerning the constitutionality of § 56-3405b (d) (1) is necessary, because the statute not only grants the insurer the right of subrogation, it also governs the extent of its subrogation right, i.e., it specifies that the insurer is subrogated to the rights of the insured for benefits provided under §§ 56-3403b and 56-3404b.

some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78 [31 SC 337, 340, 55 LE 369]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U. S. 61, 69-70 [33 SC 441, 443, 57 LE 730]. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U. S. 420, 426 [81 SC 1101, 1105, 6 LE2d 393]." Dandridge v. Williams, 397 U. S. 471, 485 (90 SC 1153, 25 LE2d 491) (1970). "Under the equal protection guarantee of our State Constitution (Code Ann. § 2-203), classification in legislation is permitted when the classification is based on rational distinctions, and the basis of the classification bears a direct and real relation to the object or purpose of the legislation. *C. & S. Nat. Bank v. Mann,* 234 Ga. 884, 887 (218 SE2d 593) (1975); *Dunn v. State,* 239 Ga. 537 (238 SE2d 77) (1977); *Wilder v. State,* 232 Ga. 404, 405-408 (207 SE2d 38) (1974); *Coy v. Linder,* 183 Ga. 583 (189 SE 26) (1936)." *Cannon v. Ga. Farm &c. Ins. Co.,* 240 Ga. 479, supra, p. 482. Likewise, if a statutory classification is rational and nonarbitrary, it is not unconstitutional as a matter of substantive due process. See, e.g., Usery v. Turner Elkhorn Mining Co., 428 U. S. 1, 15 (96 SC 2882, 49 LE2d 752) (1976). See generally, 16A AmJur2d 978, Constitutional Law, § 816.

We therefore hold that there is no constitutional impediment, either under the equal protection or due process clauses, to the state's making the subrogation rights of a no-fault automobile insurer dependent upon the weight of the vehicles involved in the accident.

2. However, in *City Council of Augusta v. Lee,* 153 Ga. App. 94 (2) (264 SE2d 683) (1980) (cert. den.) and *Hall v. White,* 150 Ga. App. 545 (258 SE2d 256) (1979) the Court of Appeals has held that under Code Ann. § 56-3410b (b) a person eligible for § 56-3404b optional no-fault benefits is not precluded from pleading and recovering against the tortfeasor those damages for which compensation is available under § 56-3404b (d). Section 56-3410b (b) provides: "Any person eligible for economic loss benefits described in section 56-3403b, subsection (b) is precluded from pleading or recovering in an action for damages against a tortfeasor, those damages for which compensation is available for economic loss under said section: Provided, however, that nothing contained in this section shall preclude the introduction of any evidence otherwise admissible in a judicial proceeding for the purpose of proving the extent of the injury

or injuries sustained by such person."[9]

In *Hall,* the Court of Appeals held that, although the insured is precluded by reason of § 56-3410b (b) from pleading and recovering those damages for which compensation is available under § 56-3403b (mandatory no-fault benefits), the insured can plead and recover those damages for which compensation is available under § 56-3404b. In *Lee,* the Court of Appeals simply held that compensation received as optional no-fault coverage under § 56-3404b is "collateral source insurance" and is not relevant and material in an action by the insured against the tortfeasor.[10]

However, neither *Hall* nor *Lee* considers § 56-3405b (d) (1), as enacted in 1978. In our opinion, § 56-3405b (d) (1) gives to the insurer, in those cases in which it is entitled to subrogation, the right of subrogation to the extent of benefits provided under both §§ 56-3403b and 56-3404b.[11] In those cases in which the insurer is not entitled to subrogation under § 56-3405b (b) (1), we agree with *Hall* and *Lee* that § 56-3410b (d) does not preclude the insured from recovering against the tortfeasor those damages for which compensation is available under § 56-3404b.

3. This brings us to the appellant's last enumeration of error, in which it is argued that the trial court erred in denying its motion to intervene in this case.

---

[9]For a discussion of § 56-3410b (b), see fn. 4. Under § 56-3410b (a), an insured person is exempt from liability to pay damages from noneconomic loss unless the injury is a "serious injury" as defined in § 56-3402b (j). See *Williams v. Kennedy,* 240 Ga. 163 (3) (240 SE2d 51) (1977). Section 56-3402b (j) defines "serious injury" as meaning, basically, an injury resulting in reasonably incurred medical expenses exceeding $500. "Noneconomic loss" is defined in § 56-3402b (1) as meaning "pain, suffering, inconvenience and other nonpecuniary damage recoverable under the tort law of this State."

[10]Under the "collateral source rule," which was recognized in *Lee,* supra, a tort plaintiff's receipt of benefits from a source independent of and collateral to the wrongdoer does not diminish the damages otherwise recoverable by the plaintiff from the wrongdoer. 22 AmJur2d 286, Damages, § 206. The "collateral source rule" has been applied in many different situations in this state. See *Cincinnati, N.O. &c. R. Co. v. Hilley,* 121 Ga. App. 196, 201-202 (173 SE2d 242) (1970) and cits.

Although *Hall* and *Lee* were decided on different grounds, together they hold that the Reparations Act does not preclude an insured from recovering from the responsible tortfeasor those damages for which compensation is available as optional no-fault insurance under § 56-3404b, which is merely "collateral source insurance."

[11]The 1974 and 1976 versions of § 56-3405b (d) (1) also give insurers subrogation rights to the extent of benefits provided under §§ 56-3403b and 56-3404b. See fn. 7, supra.

A motion to intervene should be granted as a matter of right under Code Ann. § 81A-124 (a) (2) "when the applicant claims an interest relating to the property or transaction which is the subject-matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." As noted in *Lynn v. Wagstaff Motor Co.,* 126 Ga. App. 516 (191 SE2d 324) (1972), the requirements for intervention under § 81A-124 (a) (2) are threefold: interest, impairment resulting from unfavorable disposition, and inadequate representation.

(a) The appellant is most assuredly claiming, and does in fact have, an interest in the subject-matter of this action. This is so because the claims to which the appellant are subrogated under §§ 56-3403b and 56-3404b constitute part of the damages for which the appellee is seeking recovery in this wrongful-death action.

As noted in *Cannon v. Ga. Farm &c. Ins. Co.,* 240 Ga. 479, supra, the provisions of §§ 56-3403b and 56-3404b for survivor's benefits extend beyond the death of the insured coverage for loss of income under §§ 56-3403b (b) (2) and 56-3404b (b) (2) and expenses incurred in replacing lost services under §§ 56-3403b (b) (3) and 56-3404b (a) (1) (iii).[12] In wrongful-death actions, Code § 105-1302 allows the widow or children to recover for the homicide of the husband "the full value of the life of the decedent, as shown by the evidence." "The full value of the life of the decedent, as shown by the evidence" is defined under Code § 105-1308 to mean "the gross sum that the deceased would have earned to the end of his life, had he not been killed, reduced to its present cash value." *Pollard v. Boatwright,* 57 Ga. App. 565, 568 (196 SE 215) (1938).

So defined, a recovery for the "full value of the life of the decedent" would include compensation for sums payable as loss of earnings under §§ 56-3403b (b) (2) and 56-3404b (b) (a) (1) (ii).

(b) Therefore, the appellant's motion to intervene should have been granted by the trial court if it can also be said that the appellant is so situated that disposition of this action will as a practical matter impair or impede its ability to protect its interest, unless its interest is adequately represented by existing parties. We conclude that the appellant is so situated that disposition of this action may as a practical matter impair or impede its ability to protect its subrogation interest, and its subrogation interest is not adequately

---

[12]See fn. 5.

represented by existing parties. Accordingly, we hold that the trial court should have granted the motion to intervene.[13]

If the appellant allowed this case to proceed to a judgment without asserting its right of subrogation by intervening as a party plaintiff, it could be argued that it waived its right of subrogation. See *Firemen's Ins. Co. v. Ga. Power Co.,* 181 Ga. 621 (183 SE 799) (1935); *Ga. Farm &c. Ins. Co. v. Southeastern &c. Ins. Co.,* 144 Ga. App. 811 (242 SE2d 743) (1978); *Allstate Ins. Co. v. Austin,* 120 Ga. App. 430 (3) (170 SE2d 840) (1969). See also *Allen v. Unigard Ins. Co.,* 245 Ga. 475 (265 SE2d 774) (1980), but see *Vigilant Ins. Co. v. Bowman,* 128 Ga. App. 872 (198 SE2d 346) (1973). The appellant has a need to intervene so as to ensure that the plaintiff is precluded from recovering those sums paid to her as compensation for loss of earnings of the decedent under §§ 56-3403b (b) (2)[14] and 56-3404b (a) (1) (ii). If the plaintiff's right of recovery in this case is not so limited, in any subsequent suit by the appellant against the wrongdoer's insurance company to recover these sums, a "double recovery" could be pleaded as a defense.

4. Finally, we note our agreement with the trial court's ruling that § 56-3405b (d) (1) limits the insurer's right of recovery to the insurance carrier of the tortfeasor.

In this case, as in many cases against common carriers, the defendant's insurance carrier is named as a party defendant.[15] Therefore, State Farm can enforce its right of recovery against the tortfeasor's insurance carrier by intervening in this case. Although § 56-3405b (d) (1) does limit the insurer's right of recovery to the tortfeasor's insurance carrier, this statute does not specify the manner in which this right of recovery is to be enforced. Cf. prior Code Ann. § 56-3405b (d) (1) (Ga. L. 1974, pp. 113, 118; 1976, pp.

---

[13]Arguably, it could be held that State Farm is entitled to intervention on two other grounds. First, it could be argued that State Farm can intervene as a matter of right in that it is a part owner of a claim being sued on. See *Lindsey v. Samoluk,* 135 Ga. App. 852 (219 SE2d 464) (1975), revd. on other grounds, *Lindsey v. Samoluk,* 236 Ga. 171 (223 SE2d 147) (1976). See also *City of Claxton v. Claxton Poultry Co.,* 134 Ga. App. 679 (2) (215 SE2d 718) (1975). Second, it could be argued that State Farm is entitled to permissive intervention. Permissive intervention is provided for under § 81A-124 (b) (2) "when an applicant's claim or defense and the main action have a question of law or fact in common." Section 81A-124 (b) (2) also provides that, in exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

[14]As noted, supra, the appellee is precluded by reason of § 56-3410b (b) from recovering sums paid to her under § 56-3403b.

[15]See fn. 1, supra.

1078, 1079).[16]
*Judgment reversed. All the Justices concur.*

ARGUED JULY 9, 1980 — DECIDED
OCTOBER 1, 1980.

*Dickey, Whelchel, Miles & Brown, Richard A. Brown, Jr.,* for appellant.
*J. S. Hutto, Wallace E. Harrell,* for appellees.

---

[16]Section 56-3405b (d) (1) as enacted in 1974, and the 1976 amendment, provided that the subrogation rights of the insurer would be determined on the basis of tort law by agreement between the insurers involved, or, if they failed to agree, by binding intercompany arbitration. See fn. 7, supra.