## 39655. McGLOHON v. OGDEN.

HILL, Chief Justice.

We granted certiorari to the Court of Appeals in this case, *McGlohon v. Ogden,* 165 Ga. App. 172 (299 SE2d 581) (1983), to consider whether it is in conflict with *State Farm Mut. Auto. Ins. Co. v. Five Transp. Co.,* 246 Ga. 447 (271 SE2d 844) (1980), on the issue of whether a plaintiff's recovery against a tortfeasor for lost earnings should be reduced by the amount received by the plaintiff as economic loss benefits under his own optional no-fault insurance coverage.

The Court of Appeals held that economic loss benefits paid to plaintiff by his insurer were protected under the collateral source rule and any verdict for lost wages and future loss of earnings should not be reduced by virtue of the plaintiff's receipt of such benefits.[1]

Plaintiff, O. P. Ogden, was a passenger riding in the automobile of Bob McGlohon at the time of an accident in which McGlohon was killed and plaintiff was injured. Plaintiff was insured by State Farm Mutual Automobile Liability Insurance Company for $50,000 optional personal injury protection (PIP), and McGlohon carried liability coverage and minimum PIP benefits of $5,000 with Hanover Insurance Co. Plaintiff received PIP benefits totalling over $50,000 from both of these companies. When plaintiff later sued McGlohon's administratrix, he claimed $93,600 for lost wages and $140,000 for future loss of earnings, among other damages. The defendant sought partial summary judgment contending that $45,000 already received by plaintiff from his insurer as optional PIP benefits for these same economic losses should be deducted from any amounts which the jury might award for lost earnings. Plaintiff filed a cross motion contending that he is entitled to recover his lost earnings from the

---

[1] The collateral source rule permits an injured party to recover damages from a tortfeasor notwithstanding the fact that the injured party received compensation for his or her damages from other sources. *Bennett v. Haley,* 132 Ga. App. 512, 522 (208 SE2d 302) (1974). "Under this rule 'A tortfeasor can not diminish the amount of his liability by pleading payments made to the plaintiff under the terms of a contract between the plaintiff and a third party who is not a joint tortfeasor.'" *Insurance Co. v. Fowler,* 148 Ga. App. 509, 511 (251 SE2d 594) (1978).

defendant. The trial court granted plaintiff's motion and denied the defendant's motion. The Court of Appeals affirmed and we granted certiorari.

1. Since this accident happened in July 1975, we apply the law as it existed at the time of the accident, Ga. L. 1974, p. 113 et seq., although some of the applicable sections have since been amended by Ga. L. 1976, p. 1078; Ga. L. 1978, p. 2075. *Blaylock v. Ga. Mut. Ins. Co.,* 239 Ga. 462 (1) (238 SE2d 105) (1977).

Our no-fault insurance law was enacted in 1974. Ga. L. 1974, p. 113 (now OCGA § 33-34-1 et seq. (Code Ann. § 56-3401b)). Section 3(b) of the 1974 act provides for mandatory minimum no-fault coverage up to $5,000 per person injured, covering medical expenses, loss of income or earnings, expenses for services ordinarily performed by the injured person made necessary by his or her disability, and funeral expenses. OCGA § 33-34-4 (Code Ann. § 56-3403b). Section 4 provides for optional no-fault coverage of up to $50,000 for the same losses described in Section 3. OCGA § 33-34-5 (Code Ann. § 56-3404b).[2] Thus, loss of income and loss of future earnings are recoverable under minimum mandatory PIP as well as under optional PIP coverage.

In *Hall v. White,* 150 Ga. App. 545, 546 (258 SE2d 256) (1979), the Court of Appeals found that, pursuant to Section 10(b) of the 1974 Act, OCGA § 33-34-9(b) (Code Ann. § 56-3410b), a plaintiff may not recover economic losses from a tortfeasor that are recoverable under the mandatory minimum no-fault coverage [Section 3(b)]. Section 10(b) provides: "Any person eligible for economic loss benefits described in Section 3, subsection (b) of this Act is precluded from pleading or recovering in an action for damages against a tortfeasor [t]hose damages for which compensation is available for economic loss under said Section; . . ." But, the court also held that a plaintiff may recover from a tortfeasor economic losses reimbursed under his optional no-fault coverage (Section 4). In *City Council of Augusta v. Lee,* 153 Ga. App. 94, 98 (264 SE2d 683) (1980), the Court of Appeals explained further that such optional benefits (Section 4) received from the plaintiff's own insurer were "collateral source" insurance and not material or relevant to the issues in the case between the plaintiff and the tortfeasor.

*State Farm Mut. Auto. Ins. Co. v. Five Transp. Co.,* 246 Ga. 447, supra at 452, involved a plaintiff with optional PIP benefits who was killed by a truck. There this court pointed out that neither *Hall* nor *Lee*

---

[2] Sections 3 and 4 of the 1974 Act were amended in 1975, Ga. L. 1975, p. 1202, but those amendments are not pertinent here.

considered Section 5(d) of the Act as amended in 1978, OCGA § 33-34-3(d)(1) (Code Ann. § 56-3405b), saying: "In our opinion, [Section 5(d)] gives to the insurer, in those cases in which it is entitled to subrogation, the right of subrogation to the extent of benefits provided under both [Section 3] and [Section 4]. In those cases in which the insurer is not entitled to subrogation under [Section 5(d)], we agree with *Hall* and *Lee* that [Section 10(b)] does not preclude the insured from recovering against the tortfeasor those damages for which compensation is available under [Section 4]." By clear implication, we disagreed with *Hall* and *Lee* as to those cases in which the insurer is entitled to subrogation.

Section 5(d) of Ga. L. 1974, pp. 113, 119, like the 1978 amendment referred to above, provides that "Insurers and self-insurers providing benefits without regard to fault described in Sections 3 and 4 shall be subrogated to the rights of the persons for whom benefits are provided, to the extent of the benefits provided, with the right of recovery and the amount thereof shall [sic] be determined by agreement on the basis of tort law between the insurers involved, or, if they fail to agree, by binding intercompany arbitration under procedures approved by the Insurance Commissioner. . . ."[3] Thus, we concluded in *State Farm v. Five,* supra, 246 Ga. at 452, that although Section 10(b) expressly prevents a plaintiff from seeking to recover mandatory minimum PIP benefits received, Section 5(d) also precludes a plaintiff from recovering those optional no-fault benefits for which plaintiff's insurer has rights of subrogation.

Let us examine the rationale of *State Farm v. Five,* supra. A plaintiff choosing optional no-fault benefits is injured by a defendant with minimum no-fault coverage. Plaintiff receives optional PIP benefits from his or her insurance company. Plaintiff's insurance company is subrogated to the extent of the benefits provided plaintiff. Plaintiff sues defendant. Under the law, plaintiff's insurer is entitled to recover from defendant's liability insurance company the no-fault benefits it paid plaintiff. Must defendant's insurance company (which provides liability as well as no-fault coverage) pay *all* of plaintiff's damages *and* pay plaintiff's insurance company the amount it paid to plaintiff? Clearly the answer is "no." Defendant's

---

[3] Section 5(d) of the 1974 Act, quoted in part above, provided for subrogation, with the right of recovery and amount to be determined by agreement or binding arbitration. Ga. L. 1976, p. 1078, limited subrogation to those cases in which the insured had been completely compensated. Ga. L. 1978, p. 2075, in effect continued the right of subrogation only as to vehicles weighing over 6,500 pounds; the 1978 Act removed the arbitration provision.

insurance company should not be required to pay duplicate damages. The collateral source rule is inapplicable in no-fault insurance cases where the collateral source (plaintiff's insurance company) is subrogated to plaintiff's right of recovery.

In the case before us, the Court of Appeals attempted to distinguish *State Farm v. Five,* supra, because it is based on the 1978 Act, rather than the 1974 Act applicable here. We find, as noted above, however, that the provisions involved here are essentially the same in both these enactments. The 1974 Act provided for subrogation; the 1978 Act continued the right of subrogation for vehicles in excess of 6,500 pounds (see footnote 3). Thus, *State Farm v. Five* is applicable here.

We hold that in those cases in which plaintiff's no-fault insurer is entitled to subrogation, the plaintiff's recovery from the tortfeasor must not include damages for which the plaintiff has been compensated by his or her no-fault insurer (i.e., plaintiff's recovery must not include damages which plaintiff's insurer is entitled to recover by virtue of its right of subrogation). Therefore, in cases in which plaintiff's no-fault insurer is entitled to subrogation, the collateral source rule is inapplicable.

2. We next turn to the matter of arbitration as applied to the facts of this case. Here, plaintiff's insurer, State Farm, under its right of subrogation under Ga. L. 1974, pp. 113, 119, Section 5(d), quoted above, proceeded to arbitration and lost. Does its failure to succeed in arbitration permit the plaintiff to recover against the tortfeasor damages for which plaintiff has been compensated?

Under Ga. L. 1974, pp. 113, 119, at Section 5(d), the plaintiff's insurer "shall be subrogated to the rights of the . . .[plaintiff] to the extent of the benefits provided. . . ." This provision as to subrogation is self-executing; i.e., no agreement between the insured and insurer is required to effectuate the right of subrogation. Because the rights of the plaintiff were subrogated to his insurance company on all of his optional no-fault losses under Ga. L. 1974, pp. 113, 119 at Section 5(d), any claim he had against the tortfeasor for these same losses was extinguished. See *Harrell v. Carlton,* 141 Ga. App. 41, 42 (232 SE2d 384) (1977); *Bryant v. Atlanta Gas Light Co.,* 149 Ga. App. 126, 127 (253 SE2d 807) (1979). Therefore, the Court of Appeals erred in affirming the trial court's grant of partial summary judgment to the plaintiff and its denial of the defendant's motion.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 9, 1983.

*Richard A. Brown, Jr.,* for appellant.
*Billy N. Jones,* for appellee.