WHITE, APPELLANT, *v.* BOARD OF ZONING APPEALS OF MADISON TOWNSHIP ET AL., APPELLEES.

[Cite as White *v.* Bd. of Zoning Appeals (1983), 6 Ohio St. 3d 68.]

(No. 82-868—Decided July 27, 1983.)

Ms. *Karen S. Darby,* for appellant.

Messrs. *Renwick, Welsh & Burton* and *Mr. Jon K. Burton,* for appellees.

*Per Curiam.* The appellant's residence is in an R-2 district. Under Section 403.2 of the Madison Township zoning resolution, the uses permitted in an R-2 district are:

1. One family dwellings
2. Two family dwellings
3. Townhouse dwellings
4. Multiple family dwellings
5. Public schools, parks and recreational facilities
6. Accessory buildings and uses
7. Automobile parking spaces.

The term "family" is defined by Section 200.1(31) of the resolution as:

"* * * one (1) or more persons related by marriage or immediate blood relationship living together as a single housekeeping unit and doing their cooking on the premises as distinguished from a group occupying a boarding house, lodging house, club, fraternity, hotel or motel or nursing home."

Appellant proposes to house up to two females in her home. Although they will live together as "a housekeeping unit," they will not be related by marriage or blood. Hence, the zoning resolution forbids classifying appellant's proposed use as a permitted "family" dwelling.

However, appellant argues that the home she wishes to establish is allowed as an accessary use under the resolution. In the alternative, appellant continues to assert that the definition of "family" in the resolution is unconstitutionally narrow. Adhering to our well-settled rule that we will not decide constitutional questions unless necessary,[2] we turn first to appellant's proposition that her proposed use is allowable as an accessory use.

Section 200.1(1) of the zoning resolution defines "accessory use" as:

"An 'accessory use' is a use which is clearly incidental and subordinate to, and located on the same lot as the principal use or building.

"An 'accessory use' includes but is not limited to the following:

"a. Residental accommodations for servants, caretakers, or night watchmen.

---

[2] See, *e.g., Anderson* v. *Jacobs* (1981), 68 Ohio St. 2d 67, 72, fn. 11 [22 O.O.3d 268]; *State, ex rel. Hofstetter,* v. *Kronk* (1969), 20 Ohio St. 2d 117, 119 [49 O.O.2d 440].

"b.  Off-street parking and loading spaces, open or enclosed, subject to the off-street parking and loading regulations of the zoning district in which the lot is located.

"c.  Swimming pools for use of the occupants of a residence or their guests.

"d.  Storage of goods used in or produced by business or industrial activities.

"e.  Home occupations.

"f.  Storage of merchandise normally carried on in connection with a business or industrial use, unless such storage is excluded from the applicable provisions of the district regulations.

"g.  Storage of goods used in or produced by industrial uses or related activities unless such storage is excluded in the applicable district regulations."

It is appellant's plan to house up to two mentally retarded adult women in her residence. To determine whether this will constitute lawful accessory use, Section 200.1(1) of the zoning resolution focuses our inquiry upon two factors: whether appellant's requested use is "clearly incidental" and "subordinate" to the use of her property as a family residence.[3]

A review of the record in this case leads us to the conclusion that appellant's proposed use is a valid "accessory use" as that term is used in the Madison Township zoning resolution. The facility, which appellant seeks to operate, will be contained entirely within her home. With the exception of installing smoke detectors and fire extinguishers, neither the interior nor the exterior of the house will be altered. Appellant's charges will be long term rather than transitory. They will live in a familial setting as a single housekeeping unit. They will participate together in typical family activities such as taking trips and going to church. Appellant will provide training to the women who reside with her, which is intended to help them learn how to cook, clean and do laundry.

All of the above factors demonstrate that appellant's proposed use is "clearly incidental" and "subordinate" to the use of appellant's home as a "family dwelling."[4] Consequently, we hold that appellant's use of her residence as a family home for two mentally retarded adults qualifies as an "accessory use" as that term is defined by Section 200.1(1). Our conclusion is

---

[3] The accessory use must also be "located on the same lot as the principal use * * *." This requirement has been satisfied here.

[4] In addition to requiring a marital or blood relationship, the definition of "family" in the zoning resolution, Section 200.1 (31), focuses upon the nature of the group occupying the dwelling. The resolution requires the group to live together as a single housekeeping unit. Appellant's family home will operate as a single housekeeping unit; hence, its operation is compatible with the concept of "family" as that term is used in the resolution.

further buttressed by the fact that other foster care facilities are located in the township.[5]

Nevertheless, appellees argue that since appellant will have a relief operator, the family home cannot qualify as an accessory use. In support of this contention, appellees rely upon Section 403.3 (5) of the zoning resolution. Under this section, one may not use his residence for a home occupation when non-residents will be employed in the occupation. Appellees argue that as the relief operator is a non-resident employee, the housing of two women is not an accessory use.

In our opinion, the fact that appellant's family home is not used for a home occupation does not necessarily lead to the conclusion that the family home is not an accessory use. Home occupations are only one type of accessory use under the zoning resolution, and insofar as we hold that the appellant's use of her home is otherwise qualified as an accessory use, its failure to be a home occupation is not relevant.[6]

Based upon the foregoing, we hold that the Madison Township Board of Zoning Appeals incorrectly determined that appellant's planned family home was not an "accessory use" as that term is defined in the zoning resolution. Further, the trial court and the court of appeals erroneously affirmed the board's determination. Consequently, we reverse the judgment of the court of appeals and this cause is remanded to the trial court so that it may direct the issuance of the necessary zoning authorization.[7]

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

J. P. CELEBREZZE, JJ., dissents.

---

[5] Cf. *Douglas County Resources, Inc.* v. *Daniel* (1981), 247 Ga. 785, 280 S.E. 2d 734.

[6] The parties argue the applicability of *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259 [17 O.O.3d 167], and *Saunders* v. *Zoning Dept.* (1981), 66 Ohio St. 2d 259 [20 O.O.3d 244]. In those cases, this court was called upon to decide whether a proposed group home was a "family" as that term was defined by the city of Canton and Clark County zoning regulations. Here, the premise of our decision is the assumption that appellant's proposed family home does not come within Madison Township's definition of "family." We hold that appellant is entitled to an accessory use based upon the facts of this case. Consequently, *Garcia* and *Saunders* are not relevant to our decision.

[7] In light of our holding, we do not reach appellant's constitutional arguments.