### 67696, 67697. CABELLERO et al. v. PATE (two cases).

CARLEY, Judge.

Appellees initiated medical malpractice actions against several defendants, including appellants Dr. Cabellero and Mr. Cagle, who were employees of West Central Georgia Hospital. Appellee Rachel Pate sought damages for personal injuries sustained as a result of the alleged malpractice, and appellee Bobby Joe Pate sought damages for loss of consortium of his wife, Rachel Pate. During discovery, appellees sought by subpoena duces tecum served on the Medical Director of the hospital, copies of any malpractice insurance policies providing coverage to certain named defendants who were employees or former employees of the hospital. Appellants moved for a protective order pursuant to OCGA § 9-11-26 (c) so as to prohibit discovery by appellees of insurance policies purchased or formulated by the State and providing coverage to appellants as state employees. That protective order was denied by the trial court. This court granted appellants' applications for interlocutory appeals, which have been consolidated for appellate review.

The single issue to be decided is one of first impression. That issue is whether policies of liability insurance purchased by the State

and covering state employees are exempt from discovery. OCGA § 45-9-1 (a) provides in pertinent part as follows: "In addition to any other compensation which may be paid to an officer, official, or employee of any agency, board, bureau, commission, department, or authority of this state, each such agency, board, bureau, commission, department, or authority is authorized, in its discretion, to purchase policies of liability insurance or contracts of indemnity, or to formulate sound programs of self-insurance utilizing funds available . . . insuring or indemnifying such officers, officials, or employees to the extent that they are not immune from liability against personal liability for damages arising out of the performance of their duties or in any way connected therewith . . . ." OCGA § 45-9-1 (c) further provides: "The existence of such insurance or indemnification shall not be disclosed or suggested in any action brought against such individual."

Appellants assert that OCGA § 45-9-1 (c), which prohibits the disclosure or suggestion of the existence of insurance policies purchased by the State to provide coverage for its employees, *applies to all phases* of any litigation against employees or former employees covered by such insurance. Therefore, appellants contend, the trial court erred in denying their motions for a protective order prohibiting discovery of such liability insurance policies providing them coverage.

Appellees, on the other hand, contend that OCGA § 45-9-1 (c) does not prohibit the *discovery* of the insurance policies at issue. Instead, appellees assert that OCGA § 45-9-1 (c) must be construed in harmony with the existing relevant scheme of civil practice in this state. OCGA § 9-11-26 (b) (2) provides: "A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial . . . ." Appellees thus contend that the intended effect of OCGA § 45-9-1 (c) is merely to reaffirm the existing law, and that the trial court therefore correctly ruled that the insurance policies at issue are discoverable even though they would not be admissible in evidence at trial.

When interpreting statutes, this court must look diligently for the intention of the legislature. OCGA § 1-3-1. The provisions of OCGA § 9-11-26 (b) (2) were enacted by virtue of Ga. Laws 1972, p. 510, which amended the then existing Civil Practice Act. It was not until several years later that the legislature enacted OCGA § 45-9-1 (c) (Ga. Laws 1977, p. 1051). "[A] statute must be construed with reference to the whole system of which it forms a part . . . . 'All statutes are presumed to be enacted by the legislature *with full knowledge of the existing condition of the law and with reference to it*. They are

therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.'" (Emphasis supplied.) *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 700-701 (10 SE2d 375) (1940). See also *Allison v. Domain*, 158 Ga. App. 542, 544 (281 SE2d 299) (1981). Furthermore, " '[t]he rule of construction that effect is to be given to all the words of a statute, forbids that two provisos should be treated as having no more scope or significance than one of them would have if standing alone. It is better to wait for legislative amendment than to arbitrarily reject one of the provisos as senseless or superfluous.' [Cit.] 'All the words of the legislature, however numerous, ought to be preserved, and effect given to the whole, if it can be done. No doubt courts could sometimes better legislation by rejecting some of the words delivered to them by the legislature for construction; but *to do this courts have no power.*' [Cit.]" (Emphasis in original.) *Butterworth v. Butterworth*, 227 Ga. 301, 304 (180 SE2d 549) (1971).

While appellees' interpretation of OCGA § 45-9-1 (c) is not without reason, based on the foregoing principles of statutory construction, we are compelled to find that the trial court erred in denying appellants' motion for a protective order. OCGA § 45-9-1 was enacted subsequent to OCGA § 9-11-26 (2) (b). This court must presume that the legislature had full knowledge of the existence of OCGA § 9-11-26 when it enacted OCGA § 45-9-1. If OCGA § 45-9-1 were to be interpreted as appellees contend, which is to allow the discovery of insurance policies such as the ones at issue, and merely to prohibit the disclosure of their existence at trial, that statute would have no more purpose or effect than does OCGA § 9-11-26 (b) (2). Such an interpretation would amount to a determination that the legislature acted superfluously and senselessly in enacting OCGA § 45-9-1 (c). The courts of this State are without power to make such an interpretation. See generally, *Mitchell v. City of Newnan*, 125 Ga. App. 761 (188 SE2d 917) (1972); *Strickland v. City of Winterville*, 130 Ga. App. 425 (203 SE2d 706) (1973).

Moreover, it appears from the very language employed that the intent of the legislature in enacting OCGA § 45-9-1 (c) was to create an exception to the general discovery provisions already in existence. "It is an elementary rule of statutory construction that a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto." *Butterworth v. Butterworth*, supra at 303-304.

Reading OCGA § 9-11-26 (b) (2) "in pari materia" with OCGA § 45-9-1 (c), as statutes "relating to the same subject matter," the words "discovery" and "disclosure" appear to be used synonymously. OCGA § 9-11-26 (b) (2) provides that "[a] party may obtain *discovery* of the existence and contents of any insurance agreement . . . . Information concerning the insurance agreement is not by reason of *disclosure* admissible in evidence at trial." (Emphasis supplied.) OCGA § 45-9-1 (c) in turn provides that "[t]he existence of such insurance or indemnification shall not be *disclosed* or suggested in any action brought against such individual." (Emphasis supplied.) Moreover, OCGA § 45-9-1 (c) prohibits the disclosure or suggestion of the existence of insurance "in any action." An "action" is "the judicial means of enforcing a right." OCGA § 9-2-1 (1). "A civil action is commenced by filing a complaint with the court." OCGA § 9-11-3. OCGA § 9-11-26 (b) (2), on the other hand, does not contain such a broad prohibition. That statute authorizes discovery of the existence of insurance during the period between the commencement of an "action" and trial. It merely prohibits disclosure of information concerning insurance during the trial phase of an "action." Therefore, in reading the statutes "in pari materia," OCGA § 45-9-1 (c) prohibits discovery of such insurance.

Thus, we find that the trial court erred in denying the motion for a protective order prohibiting discovery by appellees of such insurance policies as may have been purchased by the State and which provided coverage to its employees and former employees who are named defendants in this litigation.

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED JUNE 18, 1984 —
REHEARING DENIED JUNE 29, 1984 —

*Michael J. Bowers, Attorney General, H. Perry Michael, First Assistant Attorney General, Carol A. Cosgrove, Senior Assistant Attorney General,* for appellants.

*Ronald W. Self, Roger H. Anderson, Samuel P. Pierce, Jr., Howell Hollis,* for appellees.